752 So.2d 1044 (1999)
Steven HOUSTON a/k/a Steve Rinzo Houston, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00270-COA.
Court of Appeals of Mississippi.
April 20, 1999.
*1045 Azki Shah, Clarksdale, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
McMILLIN, C.J., for the Court:
¶ 1. Steven Houston has appealed his conviction of attempted burglary. Houston argues that the trial court made two erroneous rulings during the course of his trial that would require his conviction to be reversed. We disagree and affirm the conviction.

I.

Facts
¶ 2. The State's chief witness, Charles Stanton, testified that he was alone at home in the city of Clarksdale in the late evening hours when he heard noises outside his home. He investigated and discovered an individual attempting to gain entrance through his back door. When those efforts failed, the individual went to the front door and attempted to prize it open. Stanton testified that, at that point, he secured a firearm and stood just inside the door prepared to deal with the individual if he succeeded in gaining entrance. According to Stanton, something interrupted the individual's efforts and he jumped from the porch and hurriedly left the property.
¶ 3. Stanton called the police, reported the incident, and gave a general description of the culprit. Two officers responded to the call. One of them reported discovering Houston walking on the street in the immediate vicinity of Stanton's house. Because Houston fit the general description given by Stanton, the officer detained him briefly, but, upon learning that Houston lived a few houses away, allowed him to continue on his way.
¶ 4. Stanton testified that, at some point after the officers arrived, he observed an individual that he believed to be the person who had been on his property emerging from a carport a few houses away. According to Stanton, the individual receded into the carport when he saw Stanton looking at him. The two officers and Stanton then went to this other residence and knocked on the door. All three reported hearing voices inside the house, but they were unsuccessful at the time in getting anyone to come to the door. Stanton was allowed to testify at trial, over a hearsay objection from the defendant, that he heard a voice from inside the house say, "I ain't going to lie; I ain't telling them nothing." It was later established that this house was Houston's residence. Houston was arrested and charged with attempted burglary after Stanton picked him from a photographic lineup the day after the attempted break-in.
¶ 5. Houston, testifying in his own defense, said the reason he was out on the street at the time was that he was that he was returning home from the house across the street. He said he went there in an attempt to obtain liquor or marijuana.
¶ 6. The jury convicted Houston of attempted burglary. In this appeal, Houston claims that the trial court committed reversible error (a) by denying him the opportunity to call two witnesses that were not disclosed during the discovery process and (b) by permitting Stanton to testify to the contents of the statement he heard coming from Houston's residence.

II.

The First Issue: Exclusion of Defense Witnesses
¶ 7. On the morning of trial, when defense counsel presented his list of potential witnesses, the State moved to have him reveal the nature of two witnesses whose names were not disclosed during the discovery *1046 process. Defense counsel replied that he could not do so, since he had not talked to the witnesses. When pressed by the trial court, defense counsel said that his client thought "that they were present at some point in time that night."
¶ 8. The State, arguing that these witnesses could only be classified as alibi witnesses, moved to have them excluded from testifying. The prosecution pointed out that the State had made a demand for information concerning a possible alibi defense under Uniform Circuit and County Court Rule 9.05 and that the defense had not responded. Defense counsel answered that the prosecution would have "an opportunity to talk to the witnesses to ascertain what information they have, if any, concerning this case, under Box." Alternatively, the Defense argued that the police investigative report showed that Houston had told investigating officers that he was in the company of these two individuals at the time the offense occurred and that this was sufficient to put the State on notice, both that Houston might assert an alibi defense, and what witnesses he would use to establish the defense.
¶ 9. Beginning with Houston's second argument, we decline to adopt a "substantial compliance" test to measure disclosure of a potential alibi defense under Rule 9.05. The rule provides a very structured means for the State to determine whether the defendant intends to assert an alibi defense and what witnesses the defendant will use to prove that defense. The rule prevents both trial by ambush and a waste of valuable resources of the State in the investigation of matters that might never be advanced at trial. A rule largely identical to this State's has passed constitutional muster before the United States Supreme Court in the case of Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). This Court is not inclined to relax the clear requirements of the rule to require the State, even in the absence of any response, to dig through its investigative files to determine whether there is a possibility that the defendant might raise an alibi defense at trial and then investigate and prepare to meet a defense that, at that point, only exists hypothetically.
¶ 10. Houston's first argumentthat the procedure for handling a disclosure violation in a criminal trial as outlined in the special concurrence to Box v. State must be followed before an undisclosed alibi defense can be excluded from testifyingis, we conclude, likewise without merit. See Box v. State, 437 So.2d 19 (Miss.1983) (Robertson, J., specially concurring). The Box decision dealt with a discovery violation by the State and did not, by its terms, purport to suggest that a discovery violation by a defendant would be treated similarly, although later supreme court decisions indicated that this would be the case. See, e.g., Darby v. State, 538 So.2d 1168, 1176 (Miss.1989); Darghty v. State, 530 So.2d 27, 33 (Miss.1988). The procedure recommended in Justice Robertson's concurrence was followed by the Mississippi Supreme Court, at first by case law. (See, e.g., West v. State, 553 So.2d 8, 18 (Miss. 1989); Gray v. State, 487 So.2d 1304 (Miss. 1986)). Then, in 1990, the procedure for handling discovery violations was formalized into Uniform Criminal Rule of Circuit Court Practice 4.06. That rule was carried forward essentially verbatim into the present provisions of Uniform Circuit and County Court Rule 9.04. Former Rule 4.06 said unequivocally that "[t]he court shall follow the same procedure for violation of discovery by the defense." Unif. Crim. R. Cir. Ct. Prac. 4.06.
¶ 11. We make this observation: When the supreme court elected to formalize procedures recommended in Box and extend the application of the procedures to defense discovery violations, it incorporated the procedures into Rule 9.04, which dealt with discovery matters pertaining to all areas except matters of alibi. The matter of discovering an alibi defense was handled by a separate rule that set out different duties for the State and the defense from those in Rule 9.04. The rule *1047 also set out different sanctions for dealing with violations of the rule. See URCCC 9.05. Rule 9.05 makes no cross-reference to Rule 9.04. Had the supreme court intended the Box procedures to apply to matters of alibi, it could have so provided when, in 1995, it adopted the Uniform Circuit and County Court Rules. We interpret the supreme court's failure to do so as an indication that the court intended for proceedings relating to alibi defenses to continue to be handled differently from other discovery matters.
¶ 12. The United States Supreme Court, in the case of Taylor v. Illinois, was asked to hold that the ultimate sanction of excluding defense alibi witnesses was a violation of a defendant's Sixth Amendment rights since there were sanctions short of such a drastic measure that could adequately address the problem. Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). The Supreme Court held that, so long as the trial court had some measure of discretion to assess the seriousness of the infraction and measure out an appropriate sanction, it was not a constitutional violation to exclude alibi witnesses in those instances where the defendant's failure to respond to an appropriate request could be seen as wilful. Id. at 415, 108 S.Ct. 646.
¶ 13. In the case before us, the trial court recited in the record that he was aware that, under Rule 9.05, he had several options available to him. It was only after having considered all available sanctions that he elected to apply the strongest remedy availablethe exclusion of defendant's alibi witnesses. We cannot find this to be an abuse of the trial court's discretion in this case. Not only did defense counsel completely ignore the State's request for alibi defense information, the attorney could not even make a proffer of the exact nature of these witnesses' alibi information on the morning of trial because, even at such a late date, he had not interviewed these potential witnesses to discover the nature of their story. It is difficult to envision a more flagrant and wilful disregard for the rules governing the conduct of a criminal prosecution. If the rules of discovery relating to alibi defenses can be so blatantly ignored without any consequence beyond a possible continuance to permit the State to prepare to meet the alibi evidence, then the prosecuting attorney's statement in the record is correct-the rule might as well be deleted from the books.
¶ 14. We do not, by our decision, intend to sanction the notion that every failure to strictly abide by Rule 9.05 ought to automatically result in the exclusion of alibi witness testimony. When the issue before the court involves the potential loss to the defendant of the vital right to call witnesses on his behalf, we think it proper for the trial court to consider whether one of the lesser sanctions in the rule might not adequately deal with the defendant's lack of diligence. In this case, we are satisfied that the trial court did, in fact, give due consideration to a lesser penalty. Only after doing so did the court grant the State's motion to exclude the two previously-undisclosed alibi witnesses. In view of the defendant's cavalier approach to the rules of procedure, we are satisfied that the trial court did not abuse its discretion.

III.

The Second Issue: Defendant's Hearsay Objection
¶ 15. Houston claims that the trial court erred when it permitted Stanton to testify, over the defendant's hearsay objection, that he heard a voice inside Houston's house saying, "I ain't going to lie; I ain't telling them nothing."
¶ 16. The State responds that the testimony was not hearsay since it was offered for something other than proving the truth of the matter asserted. The State contends that the probative value of this testimony was to show that, shortly after the crime was committed, "someone was in [Houston's] house and would not *1048 respond to the officers' knock on the door." The State argues that there was other evidence indicating that Houston had, only a short time before police arrived, entered the home. According to the State's brief, "[w]hat the person said did not matter; the point being made was that someone was in the house." Thus, the implication seems to be that the evidence would permit the jury to ascribe some guilty knowledge to Houston because of his unwillingness to be confronted by investigating officers.
¶ 17. If that were the sole purpose of the evidence, it is difficult to understand why the State persisted in its efforts to have Stanton testify to the exact words he claimed to have heard. Both of the officers, who were equally as well situated to hear the voice from within the house, were unable to say exactly what was said, though both testified to hearing someone in the house.
¶ 18. We are of the opinion that the prosecution had a purpose in interjecting this statement that does, in fact, implicate the hearsay rule. It is our view that the State wanted proof of this unknown person's actual words to put before the jury the idea that Houston asked the person to lie for him in an effort to help conceal his recent illegal activities. There is no other plausible inference that can be drawn from the speaker's words. We find, for purposes of hearsay analysis, that this is essentially the same as if the State sought to have a witness testify that he heard another person say, "The defendant asked me to lie about his having committed the burglary, but I said I wouldn't lie for him." The implied assertion in that statement that the prosecution would advance as the truth is that the defendant actually did make such a request, and it is for that reason that the statement would run afoul of the hearsay rule. We think that the better course in this instance would have been to exclude Stanton's recitation of the actual words themselves once defense counsel raised a hearsay objection.
¶ 19. Nevertheless, we are mindful that not every error in the admission of evidence results in reversal of a conviction. Lacy v. State, 629 So.2d 591, 594 (Miss. 1993). This evidence, though we are convinced that its purpose was to improperly suggest that Houston asked someone to help him cover up his criminal activity, was not so central to the critical issues being tried that we must reverse. The State presented graphic evidence in the form of Stanton's testimony that directly implicated Houston in an attempted burglary. Assuming that the jury found Stanton to be a credible witness, he provided overwhelming evidence of Houston's guilt. We do not conclude that the improper admission of this statement made by some unknown individual, possibly, though not certainly, made in Houston's presence, was so prejudicial to the defense that it undermined Houston's ability to receive a fundamentally fair trial. For that reason, we decline to find the judge's ruling to constitute reversible error.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF ATTEMPTED BURGLARY OF A DWELLING AND SENTENCE OF 7 YEARS WITH 5 YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
KING, P.J., CONCURS IN RESULT ONLY.
IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.