# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00599-COA

**JIMMY SHINN A/K/A JIMMY DEAN SHINN**  **APPELLANT**
**A/K/A JIMMY D. SHINN**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT: 02/25/2014
TRIAL JUDGE: HON. LEE J. HOWARD
COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: GEORGE T. HOLMES
HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: JEFFREY A. KLINGFUSS
DISTRICT ATTORNEY: FORREST ALLGOOD
NATURE OF THE CASE: CRIMINAL - FELONY
TRIAL COURT DISPOSITION: CONVICTED OF MOTOR VEHICLE THEFT
AND SENTENCED TO TEN YEARS IN THE
CUSTODY OF THE MISSISSIPPI
DEPARTMENT OF CORRECTIONS, WITH
THREE YEARS SUSPENDED AND THREE
YEARS OF POST-RELEASE SUPERVISION
AND TO PAY A $1,000 FINE
DISPOSITION: AFFIRMED - 09/22/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**WILSON, J., FOR THE COURT**:

¶1.     A jury in the Lowndes County Circuit Court convicted Jimmy Shinn of motor vehicle

theft, Miss. Code Ann. § 97-17-42 (Supp. 2013), and the trial judge sentenced him to ten

years in the custody of the Mississippi Department of Corrections, with three years

suspended and three years of post-release supervision. Shinn subsequently filed a motion for a new trial, which was denied. He now appeals, alleging that he received ineffective assistance of counsel because his lawyer did not (1) request a jury instruction on petit larceny, (2) object to certain hearsay testimony, or (3) move to dismiss the indictment on double jeopardy grounds. Shinn also claims that justice requires that his case be remanded with instructions to sentence him for the crime of petit larceny rather than motor vehicle theft. On the current record, we cannot adjudicate Shinn's double jeopardy-related ineffective assistance claim and therefore dismiss the claim without prejudice to its inclusion in a properly filed motion for post-conviction relief. Otherwise, we find no error and affirm.

**FACTS**

¶2.    Walter Poole lives in the Steens community in Lowndes County. In January 2012, Poole kept a dozen or so cars in his front yard that he worked on occasionally. One of these was a brown 1983 Buick Century.

¶3.    When Poole returned home on the afternoon of January 6, 2012, the Buick was gone. Poole asked his neighbor, Tony Mastin, if he knew anything about the Buick. Mastin said that he had seen a green Ford Explorer pulling the Buick down the highway earlier in the day, but he could not identify anyone in either vehicle. Poole contacted the Lowndes County Sheriff's Office and reported the Buick as stolen. He also contacted two local scrap yards, neither of which had seen the Buick.

¶4.    The next day, Poole found his car at the Colburn Scrap Yard in nearby Vernon, Alabama. Poole contacted the Lowndes County Sheriff's Office to let them know, and

2

Detective Eli Perrigin called the scrap yard and authorized them to release the car to Poole. Poole drove the car home and later sold it for scrap for $300. One of the Colburn Scrap Yard employees told Detective Perrigin that a white woman named Peggy Cane and an unidentified black man had brought the Buick to the yard.

¶5.    A few days later, Detective Perrigin was notified that a woman in a green Ford Explorer had been detained at a gas station for nonpayment. Because a green Explorer was implicated in the theft of the Buick, Detective Perrigin responded to the call. At the gas station, Detective Perrigin found a woman named Kimberly Chain in possession of the Explorer. Detective Perrigin spoke to Chain and explained why he was interested in the Explorer. Chain told him that she and Shinn had hauled the Buick to the Vernon scrap yard and sold it. According to Detective Perrigin, Chain also said that Shinn had been with her at the gas station, but he had run away before Detective Perrigin arrived. Chain agreed to talk with Detective Perrigin further at the sheriff's office, and Detective Perrigin had the Explorer impounded. A receipt dated January 6, 2012, for a $200 cash payment on a title loan to Jimmy Shinn was found inside the Explorer.

¶6.    Detective Perrigin checked the registration of the Explorer and found that it was registered to Shinn. A few days later, Shinn and his brother contacted the sheriff's office to request the vehicle's release. Shinn wanted the vehicle to be released to Chain, but Detective Perrigin told Shinn that the vehicle could only be released to Shinn personally. However, Lieutenant Greg Wright later spoke with Shinn and, at Shinn's request, authorized release of the vehicle to Chain. At trial, Shinn claimed that it was actually his brother who had

authorized release of the Explorer to Chain.

¶7.  At trial, Chain testified that she knew Shinn through his sister, Joyce, who was a friend of hers.  On January 6, 2012, Shinn gave her a ride in his green Explorer to the Department of Human Services.  Chain testified that on the way home, Shinn told her that he needed to pick up a car that a friend was giving him.  Shinn asked Chain if she would steer the car while he towed it to a scrap yard, and she agreed.  The pair drove to the Steens community and stopped at a house with several cars in front.  Shinn told Chain his friend was not home, and he asked her to get in an old, rusty, brown car and steer the vehicle as he towed it behind the Explorer.  She did so, and they took the car to a scrap yard in Vernon, Alabama.  Chain testified that Shinn told her to give the scrap yard employee a fake name, and the two of them settled on "Peggy Cane."  Using that name, she sold the car to the scrap yard for $250 cash, which she gave to Shinn.  She and Shinn then drove back to Lowndes County, where Shinn paid $200 toward a title loan.

¶8.  Shinn testified in his own defense.  He claimed that he had allowed Chain to borrow his Explorer on January 6 but that he did not go with her that day.  He also denied that he had been with her on the day that she was detained and questioned at the gas station.  He acknowledged that he had taken out the title loan in his name but testified that he had done so for Chain's benefit because she needed money to buy Christmas presents for her children.  Shinn claimed that it was Chain who had made a payment on the loan on January 6, not him.  Shinn testified that the first he learned of the vehicle theft was when Chain returned from the sheriff's office and told him that Detective Perrigin had coerced her into implicating him in

4

the crime.  According to Shinn, Chain said that she had given a statement against him only because Detective Perrigin had threatened to take her child if she did not name him as the thief.  On cross-examination Shinn admitted that he had a prior conviction for forgery.[1]  In rebuttal, Detective Perrigin denied Shinn's hearsay allegations that he had coerced Chain's statement.

¶9.    The jury returned a verdict of guilty, and the circuit judge later sentenced Shinn to ten years in the custody of the Department of Corrections, with three years suspended and three years of post-release supervision.  Shinn filed a motion for a new trial, which was denied, and appealed.  For the reasons discussed below, we affirm his conviction and sentence.

**ANALYSIS**

**I.    Ineffective Assistance of Counsel**

¶10.    Shinn claims that his trial counsel provided ineffective assistance in three respects: (1) not requesting an instruction on petit larceny; (2) not objecting to certain hearsay testimony; and (3) not moving to dismiss the indictment on double jeopardy grounds.  To prevail on a such a claim, the defendant must show not only that counsel's performance fell below the minimum constitutional standard laid out in *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984), but also that counsel's errors were prejudicial, i.e., "so serious that they deprived the defendant of a fair trial, that being a trial with a reliable result."  *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).  The defendant "bears the burden of proving both prongs of *Strickland*, and he faces a rebuttable presumption that his attorney's conduct

---

[1] *See Shinn v. State*, 74 So. 3d 901, 902 (¶2) (Miss. 2011).

is within the wide range of reasonable conduct and that his attorney's decisions were strategic." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. 2008) (citing *Edwards v. State*, 615 So. 2d 590 596 (Miss. 1993)). "With respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (quotation marks omitted). "If either prong [of *Strickland*] is not met, the claim fails." *Havard*, 928 So. 2d at 781 (¶8).

¶11. "It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal . . . because . . . there is usually insufficient evidence within the record to evaluate the claim." *McClendon v. State*, 152 So. 3d 1189, 1191-92 (¶12) (Miss. Ct. App. 2014) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)). Because an appellate court "is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013). We may address such claims on direct appeal only if (a) "the issues are based on facts fully apparent from the record," *id.*, or (b) the "parties stipulate that the record is adequate," and *we* "determine[] that [additional] findings of fact by a trial judge . . . are not needed," *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983). "If the record is not sufficient to address the claims on direct appeal, [we] dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief." *Sandlin*, 156 So. 3d at 819 (¶20).

6

### A.      Failure to Request Instruction on Petit Larceny

¶12.    Shinn first claims that his trial counsel's performance was constitutionally deficient because he failed to request an instruction on petit larceny. The Mississippi Supreme Court has held that "where there is an evidentiary basis for such, a criminal defendant is entitled to have the jury instructed regarding any offense carrying a lesser punishment arising out of a common nucleus of operative fact with the scenario giving rise to the charge laid in the indictment." *Green v. State*, 884 So. 2d 733, 737 (¶12) (Miss. 2004) (citing *Mease v. State*, 539 So. 2d 1324, 1329 (Miss. 1989)). However, trial counsel is afforded "broad discretion" in such matters of trial strategy, and we will not second-guess counsel's decisions that fairly may be characterized as strategic. *Havard*, 928 So. 2d at 790 (¶31); *accord Blythe v. State*, 141 So. 3d 407, 411 (¶9) (Miss. Ct. App. 2013).

¶13.    Shinn's claim fails logically and legally because there would have been no rational basis for a jury to convict Shinn of petit larceny but not motor vehicle theft. At the time Shinn was tried, petit larceny was limited to thefts of personal property valued at less than $500, but the motor vehicle theft statute imposed no value requirement at all. *Compare* Miss. Code Ann. § 97-17-43 (Supp. 2013), *with* Miss. Code Ann. § 97-17-42 (Supp. 2013) ("a motor vehicle of any value"); *Wilson v. State*, 815 So. 2d 439, 446 (¶22) (Miss. Ct. App. 2002) ("[T]he crime of vehicular theft does not have a value requirement."). Thus, the fact that Poole's thirty-year-old Buick may have been worth less than $500 was irrelevant to the jury's deliberations and verdict on the motor vehicle theft charge.[2] As applied to auto thefts,

---

[2] Effective July 1, 2014, the Legislature increased the threshold separating petit larceny from grand larceny to $1,000; amended the motor vehicle theft statute to provide that

the only other significant difference between the two crimes' respective proof requirements is that proof of intent to take a car even "temporarily" (i.e., "joyriding") will support a conviction for motor vehicle theft, *Spearman v. State*, 80 So. 3d 116, 120-21 (¶19) (Miss. Ct. App. 2011), but "larceny requires evidence of specific intent to deprive the owner of his property wholly and permanently," *State v. Smith*, 652 So. 2d 1126, 1127 (Miss. 1995). In other words, although at the time Shinn was tried petit larceny carried a lesser sentence than motor vehicle theft, the former charge actually required the prosecution to prove more, not less. Accordingly, there is no logical reason to believe that a jury would have convicted Shinn of petit larceny but not motor vehicle theft. It follows that Shinn's counsel's decision not to request such an instruction is not evidence of incompetence. Nor has Shinn shown that he was prejudiced as a result. *Strickland*, 466 U.S. at 694 (holding that proof of prejudice requires proof of a "reasonable probability" of a different result).[3] Accordingly, this claim lacks merit.

### B.     Failure to Object to Hearsay

¶14.    Shinn next claims that his trial counsel was ineffective because he failed to object to

---

thefts involving vehicles valued at less than $1,000 should be punished as petit larceny; and made probation and a fine, not imprisonment, the presumptive sentence for petit larceny. *See* 2014 Miss. Laws Ch. 457 (House Bill 585), §§ 15, 16, 17, & 83. Unfortunately for Mr. Shinn, these amendments do not apply to his case.

[3] Even if we set aside logic and assume solely for purposes of argument that there would have been some speculative benefit to requesting the instruction, our Supreme Court and this Court have previously deemed counsel's decisions to forgo requests for instructions on lesser or lesser-included offenses—and to focus instead on a full acquittal—to be within "the realm of appropriate trial strategy." *Havard*, 928 So. 2d at 791 (¶32); *accord Blythe*, 141 So. 3d at 411 (¶9). Here too, counsel's decision not to offer the jury a second charge on which to convict his client was reasonable.

hearsay testimony from Detective Perrigin relaying (1) what the scrap yard employee told him and (2) what Chain told him when he questioned her at the gas station. He speculates that there is a reasonable probability that such objections would have been sustained and that the jury would have acquitted him without this evidence. However, Shinn fails meet his burden of proving that counsel was ineffective in a constitutional sense, or that the alleged omissions were so prejudicial as to deprive him of a fair trial.

¶15. We presume that decisions not to object to testimony were strategic if they fairly can be characterized as such. *See Ravencraft*, 989 So. 2d at 443 (¶31); *Carr*, 873 So. 2d at 1003 (¶27); *Triggs v. State*, 803 So. 2d 1229, 1236 (¶23) (Miss. Ct. App. 2002). In this case, they can be. A basic premise of Shinn's unsuccessful defense was that Detective Perrigin had coerced Chain into incriminating Shinn and had essentially fabricated the entire case against him. Indeed, in his own testimony, Shinn portrayed himself as a "victim." That being Shinn's theory of the case, counsel could have made a strategic decision to allow Perregin, who was the State's final witness, to offer testimony that could not be or had not been corroborated by any other witness. Such decisions "fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Carr*, 873 So. 2d at 1003 (¶27).

¶16. Alternatively, even assuming these omissions were not strategic choices but pure mistakes, the Sixth Amendment does *not* entitle the defendant to "perfect counsel or one who makes no mistakes at trial." *Havard*, 928 So. 2d at 780 (¶7); *accord Branch v. State*, 882 So. 2d 36, 52 (¶26) (Miss. 2004) ("There is no constitutional right . . . to errorless counsel.").

Rather, the constitutional right is violated *only* if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. It cannot be said that Shinn's attorney "was not functioning as . . . 'counsel'" simply because he did not object to the limited hearsay that Shinn cites, even if these omissions were in fact "mistakes."

¶17. In addition, Shinn fails to establish prejudice, i.e., he fails to "show that there is a reasonable probability that . . . the [verdict] would have been different" had the hearsay been objected to and excluded. *Strickland*, 466 U.S. at 694. Detective Perrigin's hearsay testimony was in part redundant and added relatively little to the other evidence presented against Shinn.

¶18. Accordingly, Shinn's hearsay-based ineffective assistance claim lacks merit because he fails to meet his burden as to either prong of *Strickland*.

### C. Failure to Claim Double Jeopardy

¶19. Shinn's final ineffective assistance claim alleges that his trial counsel failed to assert a meritorious double jeopardy claim. The record on appeal provides only the faintest hints of the underlying factual basis of this claim. A month after the verdict in this case, Shinn filed a pro se motion that attached an April 2012 indictment for grand larceny, under Mississippi Code Annotated section 97-17-41 (Supp. 2013). The October 2013 indictment in the present case is for car theft, under Mississippi Code Annotated section 97-17-42. The prior indictment was under a different circuit court case number, but it obviously involved the same facts, as it also references Poole's Buick Century and the same vehicle

10

identification number. No other document from the prior case was made a part of the record in this case, and there was only a brief discussion of the prior case just before the first witness was called in this case. The district attorney confirmed that the prior case involved the "exact same factual circumstances" and that "[t]he only difference is the change of the charge in the indictment." Shinn expressed confusion about the status of and basis for the old and new indictments. Shinn thought that the first trial had resulted in a "mistrial," but the circuit judge recalled what had occurred as follows:

> [I]t was not a mistrial. What it was was you were found guilty of the offense. After that we have what's called post-trial motions. Your lawyer filed motions in that case, and I ruled on the motions. And your lawyer was correct, and I reversed that verdict and set that case aside.

The district attorney referred to the relevant motion in the prior case as one "for a judgment notwithstanding the verdict." The district attorney also represented that the prior case remained open because he had not filed a motion to dismiss the indictment. Minutes later, the circuit judge denied an ore tenus motion by the district attorney to consolidate the two cases. The judge indicated that he was denying the motion in part because consolidation would raise "jeopardy issues." There was no further discussion of the prior case, and nothing more about it can be gleaned from the record. At no point did Shinn's attorney raise a double jeopardy objection to Shinn's present prosecution.

¶20. Thus, although the prior prosecution apparently was based on the exact same facts, and Shinn appears to have obtained some sort of favorable post-trial ruling in that case, the record reveals nothing more about its course of proceedings, disposition, or status at the time of trial in this case. For this reason, we simply cannot tell whether there was any basis for

11

Shinn's lawyer to have moved to dismiss on double jeopardy grounds,[4] and so it necessarily follows that we cannot determine whether his failure to do so constituted ineffective assistance. Because the record is not sufficient to address this particular claim on direct appeal, we dismiss it without prejudice, preserving Shinn's right to raise it in a properly filed motion for post-conviction relief. *Sandlin*, 156 So. 3d at 819 (¶20).

## II. Alleged Sentencing Error

¶21. Shinn separately claims that he is entitled to be sentenced for petit larceny, not motor vehicle theft, citing *Jenkins v. State*, 888 So. 2d 1171, 1174 (¶8) (Miss. 2004), in which our Supreme Court summarized the law on this issue as follows:

> Generally, when facts constituting an offense may violate two or more statutes or, where there is substantial doubt as to which statute applies, then a sentencing court must apply the statute which imposes the lesser punishment. The State is not obligated to prosecute under the statute with the lesser penalty but may choose to proceed under either statute so long as the choice is clear and unequivocal. However, if the indictment is ambiguous as to which statute applies, the defendant may only be punished under the statute with the lesser penalty.

*Id.* (citations omitted).

¶22. *Jenkins* is of no assistance to Shinn, however, because the State made a clear and unequivocal choice in this case to proceed under Mississippi Code Annotated section 97-17-

---

[4] *See generally Tibbs v. Florida*, 457 U.S. 31, 39-47 (1982) (holding that double jeopardy bars retrial on the same offense if the defendant's conviction was reversed based on the insufficiency of the evidence at the first trial, but the defendant may be retried if the conviction was set aside as against the weight of the evidence); *Keyes v. State*, 708 So. 2d 540, 544 (¶¶12-13) (Miss. 1998) (test for determining whether two charged offenses actually constitute the "same offense"). The mere fact that two indictments are outstanding does not raise double jeopardy concerns. *See, e.g.*, *United States v. Rainey*, 757 F.3d 234, 240 (5th Cir. 2014); *United States v. Stricklin*, 591 F.2d 1112, 1115 n.1 (5th Cir. 1979).

42, the motor vehicle theft statute, *not* the petit larceny statute, Mississippi Code Annotated section 97-17-43 (Supp. 2013). Indeed, neither of Shinn's indictments refers to petit larceny. His earlier indictment—which, again, was filed under a separate case number and was not included in the record in this case until after trial and sentencing had already occurred—charged only *grand* larceny (Mississippi Code Annotated section 97-17-41). In any event, Shinn's indictment in this case clearly charged motor vehicle theft only and specifically referenced the appropriate Code section. The indictment was not ambiguous, so Shinn was appropriately sentenced for motor vehicle theft.

## CONCLUSION

¶23. We cannot adjudicate Shinn's ineffective assistance/double jeopardy claim on the present record and therefore dismiss that specific claim without prejudice to its inclusion in a properly filed motion for post-conviction relief. Otherwise, Shinn's claims are with merit, and his conviction and sentence are therefore affirmed.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF MOTOR VEHICLE THEFT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED AND THREE YEARS OF POST-RELEASE SUPERVISION AND TO PAY A $1,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., NOT PARTICIPATING.**