GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Albert Lee Thomas, Jr., was convicted in the Hinds County Circuit Court of murder for killing Johnny Earl Hampton. He was sentenced to life in the custody of the Mississippi Department of Corrections. The trial court denied Thomas’s motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. Thomas appeals and argues that: (1) he was denied due process of law because the State failed to disclose that promises were made to witnesses, and (2) a witness falsely testified that no promises were made to him.
 

 FACTS
 

 ¶ 2. Thomas, Mary Henderson, and Tony Taylor were riding in a car that was driven by Thomas when Hampton flagged them down at the corner of Prentiss and Capitol Streets to ask for a ride. The group then drove to the Maple Street Projects where they all lived. Hampton smoked crack near the apartment complex’s office, while Thomas went to his apartment. It is unclear what Henderson and Taylor did at the Maple Street Projects, but within five minutes, the group left together to ride around.
 

 ¶ 3. While driving around, Thomas and Hampton began to argue. Thomas believed that Hampton had stolen drugs from him. Thomas and Hampton exited the car and continued to argue in the street. Thomas claims that Hampton attempted to attack him with a screwdriver, so Thomas shot him in the leg in self-defense.
 

 ¶ 4. Thomas and Hampton got in the car to go to the hospital, but on the way to the hospital, the car broke down. Henderson and Taylor eventually pushed the car down the hill, while Thomas and Hampton stayed at the top of the hill. Thomas claims that when he was assisting Hampton with his walking, because of the gunshot wound to his thigh, Hampton pulled the gun from Thomas’s pocket; the two struggled over the gun; and Hampton was shot in the back of the head. Henderson and Taylor were walking toward Thomas and Hampton when they heard the shot and hid. Neither of them saw the altercation.
 

 ¶ 5. At trial, Taylor testified that he was in a position to see if Hampton had pulled a screwdriver before he was shot the first time, but he did not see one. Prior to Taylor’s testimony, the prosecutor notified the trial court and defense that he was attempting to have Taylor released on bond after he testified.
 

 ¶ 6. The trial court denied Thomas’s petition for a judgment notwithstanding the verdict or, alternatively, for a new trial based on the State’s alleged failure to disclose promises made to witnesses and its failure to correct false testimony.
 

 STANDARD OF REVIEW
 

 ¶ 7. We review alleged violations of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) de novo.
 
 United States v. Moore,
 
 452 F.3d 382, 387 (5th Cir.2006).
 

 ANALYSIS
 

 1. Was Thomas denied due process of law because the State failed to disclose promises made to witnesses?
 

 ¶ 8. Thomas alleges that the State promised Taylor that in exchange for his
 
 *1220
 
 testimony, he would be released from jail; he would receive suspended sentences in two of his unrelated cases; and two of his unrelated cases would be remanded to the file. Thomas claims that the State also promised Taylor’s mother, Xavier McDonald, that in exchange for her testimony, her son would receive this deal. The State responds that the prosecutor announced to the judge and defense that he had told Taylor that he was trying to get Taylor released.
 

 ¶ 9. In
 
 Brady,
 
 the United States Supreme Court held that “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
 
 Brady,
 
 373 U.S. at 87, 83 S.Ct. 1194. The Mississippi Supreme Court has held:
 

 To establish a
 
 Brady
 
 violation a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
 

 King v. State,
 
 656 So.2d 1168, 1174 (Miss.1995) (citing
 
 United States v. Spagnoulo,
 
 960 F.2d 990, 994 (11th Cir.1992)).
 

 ¶ 10. Under prong four, the Supreme Court has said that:
 

 The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A “reasonable probability” of a different result is accordingly shown when the government’s evidentiary suppression “undermines confidence in the outcome of the trial.”
 

 Kyles v. Whitley,
 
 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting
 
 United States v. Bagley,
 
 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
 

 A. Promises to Taylor
 

 ¶ 11. At trial, the prosecutor stood before the trial judge and stated:
 

 I want you to know that I have told Tony Taylor if he testifies, he’s told me he’s scared; that I’m going to try to see if I can get him out on bond. I’m concerned about his safety in jail. He knows that. I talked with Rebecca Taylor. And if he testifies in the murder case, then I’m going to try and see if I can get him where he doesn’t have to spend, you know, anymore time in jail until after that comes up.
 

 Thomas argues that the State made additional promises to Taylor that in exchange for his testimony, he would receive suspended sentences in two of his cases and two of his cases would be remanded. The State responds that the prosecutor fully disclosed that he was working to have Taylor released from jail, and no additional promises or deals were made.
 

 ¶ 12. Even if Thomas satisfied the first three prongs necessary to establish a
 
 Brady
 
 violation, he fails to satisfy the fourth prong. Thomas claims that had the additional offers to Taylor been disclosed to the defense, Thomas could have cross-examined Taylor about these deals, giving the jury reason to question Taylor’s credibility. However, the defense was aware that the State was going to get Taylor out of jail in exchange for his testimony and questioned him about any promises made by the prosecution on cross-examination. Taylor testified that the prosecutor was
 
 *1221
 
 going to try to get him out of jail; therefore, the jury already had reason to question Taylor’s credibility and motivation for testifying. Thomas fails to show a reasonable probability that the outcome of the proceedings would have been different if the defense would have known about the alleged additional deals made with Taylor.
 

 B. Promises to McDonald
 

 ¶ 13. Thomas claims that the State promised Taylor’s mother, McDonald, that Taylor would be released from jail, and some of his cases would be remanded to the file in exchange for her testimony against Thomas. The State fails to respond to this allegation.
 

 ¶ 14. Thomas supported his claim with an affidavit from Frank McWilliams, Taylor’s counsel. McWilliams states that Taylor told him that the prosecutor had visited McDonald’s home and promised her that in exchange for her testimony against Thomas, he would release Taylor from jail and remand some of his cases to the file. In its brief, the State does not address whether any promises were made to McDonald in exchange for her testimony.
 

 ¶ 15. Thomas produced an affidavit from Taylor’s attorney stating that promises were made to McDonald in exchange for her testimony. The trial court did not hear any testimony or make any findings of fact about this claim before denying Thomas’s motion for a judgment notwithstanding the verdict or, alternatively, a new trial. An evidentiary hearing was necessary to determine whether promises were actually made in exchange for McDonald’s testimony before this Court could address Thomas’s claim. Accordingly, we ordered the trial court to conduct an evi-dentiary hearing on this issue.
 

 ¶ 16. In the first of two evidentiary hearings, the trial court heard testimony from McWilliams who affirmed what was contained in his affidavit — that Taylor told him the prosecutor had visited McDonald’s home and promised her that in exchange for her testimony against Thomas, he would release Taylor from jail and remand some of his cases. The trial court then heard from Dunnica Lampton, the prosecutor in this case. McDonald failed to appear at the first hearing, so her testimony was taken at the second hearing.
 

 ¶ 17. Both Lampton and McDonald testified that no promises were made to McDonald concerning Taylor’s release from jail. Rather, they were concerned with Taylor’s safety while he was housed in the same jail as Thomas. McDonald was extremely worried because Taylor had received numerous death threats because of his impending testimony against Thomas; therefore, she contacted Lampton to see what could be done to protect Taylor. Lampton agreed that he would try to get bond for Taylor or have him moved to another facility.
 

 ¶ 18. After consideration, of this testimony, the trial court found that Lampton and McDonald “gave credible and reasonable testimony explaining the events, visits and attempt to secure Tony Taylor’s safety pending Defendant Thomas’[s] trial.” The trial court concluded that there were no promises or deals offered to McDonald in exchange for her testimony.
 

 ¶ 19. The trial court’s findings are supported by the testimony of both Lampton and McDonald, who independently testified in two separate hearings. We find that the trial court correctly determined that there were no promises made to McDonald; thus, there was no favorable evidence withheld from the defendant that would give rise to a
 
 Brady
 
 violation.
 

 2. Was Thomas denied due process of law because a witness falsely testified that no promises were made to him?
 

 ¶ 20. Thomas alleges that: (1) Taylor lied about whether the prosecutor
 
 *1222
 
 promised to have him released on bond and made any additional promises to him, and (2) the State failed to correct Taylor’s false testimony. The State responds that the prosecutor fully disclosed the agreement he had with Taylor and that Taylor’s testimony accurately reflected the agreement.
 

 ¶21. In order to prove a due-process violation, the defendant must demonstrate: “(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false.”
 
 Knox v. Johnson,
 
 224 F.3d 470, 477 (5th Cir.2000) (citing
 
 Giglio v. United States,
 
 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).
 

 ¶ 22. We first address if Taylor falsely testified about whether the State promised to have him released on bond. Prior to Taylor’s testimony, the prosecutor told the trial court and the defense that he was attempting to have Taylor released on bond after he testified.
 

 ¶ 23. On cross-examination, defense counsel asked Taylor the following:
 

 Q: Okay. You’re here today, Mr. Taylor. You’ve been promised to get out of jail for coming in today, haven’t you?
 

 A: No, ma’am.
 

 Q: You’ve been promised that the U.S. Attorney here, Mr. Lampton, is going to get you out of jail?
 

 A: No, ma’am.
 

 Q: No promises have been made to you?
 

 A: Ain’t no promise been made.
 

 BY MS. JACKSON: Court’s indulgence. Your Honor, we need to approach the bench.
 

 BY THE COURT: Yes.
 

 (OFF-THE-RECORD BENCH CONFERENCE)
 

 Q: Mr. Taylor, for coming in and testifying here today, you had been promised by the U.S. Attorney that he’s going to get you bond to get out?
 

 A: No, sir. He say he gone try [sic].
 

 Q: He gone try [sic]?
 

 A: Yes, ma’am.
 

 Q: He promised you, didn’t he?
 

 A: No, ma’am.
 

 Q: He promised you he was going to try, didn’t he?
 

 A: No, ma’am.
 

 Q: And you’re in jail for auto theft and receiving stolen goods. That’s what you just testified to, right?
 

 A: Yes, ma’am.
 

 BY MS. JACKSON: We have no further questions your honor.
 

 ¶ 24. The State maintains that the only deal made with Taylor was that the prosecutor would try to have him released on bond. Taylor testified that the prosecutor was going to try to get him released on bond if he testified. Taylor took exception with the defense saying the prosecutor made promises to him and repeatedly denied that promises were made. However, Taylor’s testimony is consistent with what the prosecutor told the trial court and the defense — that he was trying to have Taylor released on bond. The prosecutor had no reason to correct Taylor’s testimony. We find that Taylor truthfully testified about whether the prosecutor was working to have him released on bond in exchange for his testimony.
 

 ¶ 25. Next, we address Thomas’s claim that he was denied due process when Taylor did not disclose other promises made by the State and the State did not correct Taylor’s testimony. According to
 
 *1223
 
 the State, no additional promises or deals were made with Taylor. Under
 
 Giglio,
 
 Thomas must prove that: (1) Taylor testified falsely; (2) such testimony was material; and (3) the prosecution knew that the testimony was false.
 
 Knox,
 
 224 F.3d at 477. Thomas supports his claim that additional promises were made with an affidavit from McWilliams, Taylor’s counsel. McWilliams states Taylor told him on two occasions the prosecutor had promised to release him from prison and to give him a suspended sentence on the charges pending against him if he would testify that he saw Thomas shoot Hampton. If this is true, then Thomas would satisfy prongs one and three of
 
 Giglio
 
 that the prosecution knowingly used false testimony.
 

 ¶ 26. Thomas claims that the false testimony used by the State
 
 may
 
 have had an effect on the outcome of the trial, because the State’s additional offers to Taylor could have been used to cross-examine Taylor about these deals, giving the jury reason to question Taylor’s credibility. This Court is not concerned with whether testimony
 
 may
 
 have an effect on the outcome but with whether there is a reasonable probability that the outcome of the proceedings would have been different. There is a reasonable probability of a different result “when the government’s evi-dentiary suppression ‘undermines confidence in the outcome of the trial.’ ”
 
 Kyles,
 
 514 U.S. at 434, 115 S.Ct. 1555 (quoting
 
 Bagley,
 
 473 U.S. at 678, 105 S.Ct. 3375).
 

 ¶ 27. We previously addressed this issue of materiality in issue one. Because the defense and jury were aware that the State was going to get Taylor out of jail in exchange for his testimony, the jury already had reason to question Taylor’s credibility and motivation for testifying. Thomas fails to show that there is a reasonable probability that the outcome of the proceedings would have been different if the defense would have known about the alleged additional deals made with Taylor. Even if the State had made additional promises to Taylor — as Thomas alleges— and Taylor testified falsely, Thomas fails to meet the three-prong test under
 
 Giglio,
 
 because he does not show that this testimony was material.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.